UNITED STATES of America and P. L. Sylvia, Jr., Revenue Agent of the Internal Revenue Service, Petitioners,

v.

Harold J. RICHARDS, Respondent.

Civ. A. No. 77–0189–R.

United States District Court,
E. D. Virginia,
Richmond Division.

April 18, 1977.

David A. Schneider, Asst. U. S. Atty., Eliot Norman, Richmond, Va., Joseph M. Gontram, Tax Div., U. S. Dept. of Justice, Washington, D. C., for petitioners.

Harold J. Richards, pro se.

## MEMORANDUM

MERHIGE, District Judge.

This action is brought under §§ 7402(b) and 7604(a) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 7402(b) and 7604(a), for judicial enforcement of an Internal Revenue Summons. The individual petitioner, P. L. Sylvia, Jr., is a Revenue Agent of the Internal Revenue Service employed in Richmond, Virginia and is authorized to issue Internal Revenue summonses under the authority of § 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602. The respondent, Harold J. Richards, is a resident of Richmond, Virginia and is within the jurisdiction of this Court.

From the evidence adduced before the Court, the relevant facts are as follows:

Agent Sylvia is conducting an investigation of the federal tax liabilities of Fidelity Corporation for the years 1971–1974. At all times relevant to the investigation, the respondent Richards was the President of said Corporation. On November 12, 1976, an Internal Revenue Summons was issued by Agent Sylvia directing Mr. Richards to appear and give testimony on December 1, 1976. Mr. Richards responded to the summons and was asked a series of eleven questions, eight of which he refused to answer. That refusal prompted petitioners to institute this action for judicial enforcement of the summons and to seek an order from the Court directing Mr. Richards to answer the questions in accordance with the summons.

The series of eleven questions[1] involved in the summons concern what the IRS des-

1. 1. During the years 1971 through 1974, did the corporation, any officer or employee or any third party acting on behalf of the corporation, make, directly or indirectly, any bribes, kickbacks or other payments, regardless of form, whether in money, property, or services, to any employee, person, company or organization, or any representative of any person, company or organization, to obtain favorable treatment in securing business or to otherwise obtain special concessions, or to pay for favorable treatment for business secured or for special concessions already obtained?

2. During the years 1971 through 1974, did the corporation, any corporate officer or employee or any third party acting on behalf of the corporation, make any bribes, kickbacks, or other payments regardless of form whether in money, property or services, directly or indirectly, to or for the benefit of any government official or employee, domestic or foreign, whether on the national level or a lower level such as state, county or local (in the case of a foreign government also including any level inferior to the national level) and including regulatory agencies or governmentally-controlled businesses, corporations. companies or societies, for the purpose of affecting his/her action or the action of the government he/she represents to obtain favorable treatment in securing business or to obtain special concessions, or to pay for business secured or special concessions obtained in the past?

3. During the years 1971 through 1974, were corporate funds donated, loaned or made available, directly or indirectly, to or for the use

ignates as slush funds, kickbacks, or other illegal payments that could conceivably affect the tax liability of the Fidelity Corporation. Mr. Richards strongly contends that such inquiries are accusatory in nature, and neither relevant nor material to the legitimate scope of the IRS investigation.

The petitioners, on the other hand, maintain that the questions are relevant in that if any such illegal payments have been made and have been included as deductions on the Corporation's tax returns, such deductions would not be allowable under the Internal Revenue Code and would affect the tax liability of the Corporation.

■ The standards for judicial enforcement of an IRS summons are set out in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The Court held there that before an IRS summons requesting records, papers, or other data of a taxpayer will be enforced, four criteria must be met: (1) an investigation must be conducted pursuant to a legitimate purpose; (2) the inquiry must be relevant to that purpose; (3) the information sought must not already be within the possession of the IRS; and (4) the required administrative steps must have been followed.

■ The sole issue before this Court concerns criterion number two (2)—whether the eight questions which Mr. Richards refused to answer were relevant to the tax liability of the Fidelity Corporation. The Court's inquiry begins with the recognition that §§ 7601 and 7602 of the Internal Revenue Code of 1954 constitute a broad mandate to investigate and audit "persons who may be liable" for taxes. This investigative authority is not limited to situations in which there is probable cause to believe that a violation of the tax law exists. *United State v. Bisceglia*, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). A contention of petitioners, that the absence of a requirement of probable cause permits the IRS to make inquiries of unlimited scope, leads the Court to the conclusion that petitioners confuse the concept of probable cause with the issue of relevancy. For § 7602(3) of the Code authorizes the IRS to "take such testimony

or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

4. During the years 1971 through 1974, was corporate property of any kind donated, loaned, or made available, directly or indirectly, to or for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

5. During the years 1971 through 1974, was any corporate officer or employee compensated, directly or indirectly, by the corporation, for time spent or expenses incurred in performing services for the benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

6. During the years 1971 through 1974, did the corporation make any loans, donations or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of making contributions, directly or indirectly, for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

7. During the years 1971 through 1974, did the corporation make any loans, donations or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of reimbursing such corporate officers, employees or others for contributions made, directly or indirectly, for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

*8. During the years 1971 through 1974, does now or did any corporate officer or employee or any third party acting on behalf of the domestic corporation have signatory or other authority or control over disbursements from foreign bank accounts?

*9. During the years 1971 through 1974, does now or did the corporation maintain a bank account or any other account of any kind, either domestic or foreign, which account was not reflected on the corporate books, records, balance sheets, or financial statements?

*10. During the years 1971 through 1974, does now or did the corporation or any other person or entity acting on behalf of the corporation maintain a domestic or foreign numbered account or an account in a name other than the name of the corporation?

11. Which other present or former corporate officers, directors, employees, or other persons acting on behalf of the corporation may have knowledge concerning any of the above areas?

*Answered by respondent.

of the person concerned, under oath, as may be *relevant or material* to such inquiry." (Emphasis added). The law is settled that the Internal Revenue Service need not have probable cause to believe that a tax liability exists in order to institute an investigation, as § 7602 authorizes the summoning of "any . . . person" for the taking of testimony and examination of books which may be relevant for "ascertaining the correctness of any return, . . . in determining the liability of any person . . . or collecting any such liability . . ." That section was enacted as an aid to the Internal Revenue Service in investigating (as permitted under § 7601) and requiring all persons who may be liable to pay any Internal Revenue tax. Nevertheless, any such investigation must be related to a tax liability and not other potentially illegal conduct.

■ In this case, specific and general inquiries to Mr. Richards relating to any deductions on the corporation's tax returns are perfectly legitimate and relevant to the issue of the corporation's tax liabilities. However, the scope of at least some of the questions involved here by their very phraseology relate to potentially illegal *payments*, not *deductions* made by the Corporation, and to that extent, constitute a "fishing expedition" beyond the relevant scope of an Internal Revenue Service investigation. If, for example, the Corporation had made such illegal payments but had not utilized such payments to affect its tax liability in any manner, such payments would be beyond the scope of the present investigation. The Court is satisfied that the respondent has in good faith refused to answer the questions propounded, not for the purpose of evasion or hiding illegitimate activities, but on principle, to preserve and protect his right, and indeed, the right of all of our citizenry, from arbitrary or capricious government intrusion.

As the Supreme Court noted in *United States v. Bisceglia, supra,* at 151, 95 S.Ct. at 921, speaking through the Chief Justice, "Congress has provided protection from arbitrary or capricious action by placing the federal courts between the government and the person summoned." As the Chief Justice pointed out in that case, it is the responsibility of the District Court to conscientiously discharge its duty "to see that a legitimate investigation was being conducted and that the summons was *no broader* than necessary to achieve its purpose." (Emphasis added).

At least some of the unanswered questions, and indeed portions of each, are patently relevant and material to the investigation. Those questions, and portions of others which are not now relevant and material, may so easily be amended so as to avoid any intrusion of the rights of the respondent as to raise in the mind of the Court the query as to why same has not been done.

The answer undoubtedly lies in the unrefuted representation of the respondent that when he sought to answer more narrow or specific questions than the ones propounded, he was informed that the questions were "chiseled in granite and could not be altered."

While the Court disclaims any expertise in the art of sculpturing or indeed in any of the arts, in order to discharge the duty imposed upon it, the Court must, if need be, use its judicial chisel, as inept as it may be in the use of same, so as to narrow the scope of the inquiry in this case. Fortunately, however, the Court does not, in fact deal with questions "chiseled in granite" but with those imprinted by a typewriter, and composed in the English language, hence the labor involved in altering same will be *de minimis,* for all that is required is a simple preamble directed to any expenses of the Corporation, or any diminution or increase in the corporate income, attributable directly or indirectly to the subject matters to which the petitioners seek answers.[2]

An appropriate order will issue.

---

2. See Appendix I.

## APPENDIX I

1. During the years 1971 through 1974, were any expenses of the Corporation, or any expenditures of the corporate income or assets, attributable, directly or indirectly, to any of the following, and reflected directly or indirectly in the tax returns of the Corporation for the years in question: (a) payment by the Corporation, any officer or employee or any third party of any bribes, kickbacks or other payments, regardless of form, whether in money, property or services, to any employee, person, company, or organization to obtain favorable treatment in securing business or to otherwise obtain special concessions, or to pay for favorable treatment for business secured or for special concessions already obtained? (b) payments by the Corporation to any corporate officer or employee or any third party acting on behalf of the Corporation of or for bribes, kickbacks, or other payments regardless of form, whether in money, property or services, directly or indirectly, to or for the benefit of any government official or employee, domestic or foreign, whether on the national level or lower level such as state, county or local (in the case of a foreign government also including any level inferior to the national level) and including regulatory agencies or governmentally-controlled businesses, corporations, companies, or societies, for the purpose of affecting his/her action or the action of the government he/she represents to obtain favorable treatment in securing business or to obtain special concessions, or to pay for business secured or special concessions obtained in the past? (c) the use of corporate funds, or corporate property of any kind, donated, loaned or made available, directly or indirectly, to or for the use or benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign? (d) payment or disbursement, loans, donations or other disbursements, regardless of form, for the performing of services for the benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign? (e) loans, donations, or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of reimbursing such corporate officers, employees or others for contributions made, directly or indirectly, for the use or benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

2. During the years 1971 through 1974, was any corporate officer or employee compensated, directly or indirectly, by the Corporation, for time spent or expenses incurred in performing services for the benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

3. During the years 1971 through 1974, did the Corporation make any loans, donations or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of making contributions, directly or indirectly, for the use or benefit of, or the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

4. Which of the present or former corporate officers, directors, employees, or other persons acting on behalf of the Corporation may have knowledge concerning any of the above areas?