UNITED STATES of America, Plaintiff,

v.

Harold J. RICHARDS, Defendant.

Civ. A. No. CA77–0189–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 16, 1979.

Raymond A. Carpenter, David Schneider, Eliot Norman, Asst. U. S. Attys., Richmond, Va., Joseph M. Gontram, Atty., Donald Gavin, Tax Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Harold J. Richards, pro se.

Milton V. Freeman, Walter J. Rockler, Stephen L. Hester, Stephen M. Sacks, Robert J. Jones, Arnold & Porter, Washington, D. C., Richard L. Williams, McGuire, Woods & Battle, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on petitioners' motion to reopen this cause and for modification of the Court's order of April 18, 1977. The action was brought pursuant to §§ 7402(b) and 7604(a) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 7402(b) and 7604(a), seeking judicial enforcement of an Internal Revenue Summons. The individual petitioner, Revenue Agent P. L. Sylvia, Jr., is employed by the Internal Revenue Service ("I.R.S.") in Richmond, Virginia, and is authorized to issue investigatory summonses pursuant to § 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602. Respondent, Harold J. Richards, is the recipient of the Internal Revenue summons in question and is a resident of Richmond, Virginia, within the jurisdiction of the Court.

The relevant facts are as follows:

Agent Sylvia is conducting an investigation into the federal tax liabilities of Fidelity Corporation for the years 1971–1974. Respondent Richards was the president of Fidelity Corporation at all times during the years relevant to the investigation. On November 12, 1976, Agent Sylvia issued an Internal Revenue summons to Mr. Richards directing him to appear and give testimony on December 1, 1976. Mr. Richards appeared on that date and was asked a series of eleven standardized questions,[1] eight of

---

1. 1. During the years 1971 through 1974, did the corporation, any officer or employee or any third party acting on behalf of the corporation, make, directly or indirectly, any bribes, kickbacks or other payments, regardless of form, whether in money, property, or services, to any employee, person, company or organization, or any representative of any person, company or organization, to obtain favorable treatment in securing business or to otherwise obtain special concessions, or to pay for favorable treatment for business secured or for special concessions already obtained?

2. During the years 1971 through 1974, did the corporation, any corporate officer or employee or any third party acting on behalf of the corporation, make any bribes, kickbacks, or other payments regardless of form whether in money, property or services, directly or indirectly, to or for the benefit of any government official or employee, domestic or foreign, whether on the national level or a lower level such as state, county or local (in the case of a foreign government also including any level inferior to the national level) and including regulatory agencies or governmentally-controlled businesses, corporations, companies or societies, for the purpose of affecting his/her action or the action of the government he/she represents to obtain favorable treatment in securing

which he refused to answer. These eleven questions were formulated by the I.R.S. as an auditing technique and compliance check to aid in identifying schemes such as "slush funds" designed by corporations to circumvent the tax laws. The I.R.S. routinely asks these eleven questions of large corporations.

Mr. Richards' refusal to answer eight of the eleven questions prompted petitioners to institute this action for enforcement of the summons and to seek an order from the Court directing respondent to answer the questions. The Court heard argument in this matter in April of 1977. Mr. Richards, appearing *pro se*, argued that the unanswered questions were accusatory in nature, burdensome, and neither relevant nor material to a legitimate purpose of the I.R.S. investigation. Petitioners, on the other hand, contended that the questions were all relevant to a determination of the occurrence of any illegal payments that might have been included in Fidelity Corporation's tax returns as deductions or credits, which would therefore affect the tax liability of the corporation.

In an order and memorandum entered on April 18, 1977, the Court modified the form of the unanswered questions so as to limit the scope of the I.R.S. inquiry to the potential tax liability of Fidelity Corporation.[2]

business or to obtain special concessions, or to pay for business secured or special concessions obtained in the past?

3. During the years 1971 through 1974, were corporate funds donated, loaned or made available, directly or indirectly, to or for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

4. During the years 1971 through 1974, was corporate property of any kind donated, loaned, or made available, directly or indirectly, to or for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

5. During the years 1971 through 1974, was any corporate officer or employee compensated, directly or indirectly, by the corporation, for time spent or expenses incurred in performing services for the benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

6. During the years 1971 through 1974, did the corporation make any loans, donations or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of making contributions, directly or indirectly, for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

7. During the years 1971 through 1974, did the corporation make any loans, donations or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of reimbursing such corporate officers, employees or others for contributions make, directly or indirectly, for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

*8. During the years 1971 through 1974, does now or did any corporate officer or employee or any third party acting on behalf of the domestic corporation have signatory or other authority or control over disbursements from foreign bank accounts?

*9. During the years 1971 through 1974, does now or did the corporation maintain a bank account or any other account of any kind, either domestic or foreign, which account was not reflected on the corporate books, records, balance sheets, or financial statements?

*10. During the years 1971 through 1974, does now or did the corporation or any other person or entity acting on behalf of the corporation maintain a domestic or foreign numbered account or any account in a name other than the name of the corporation?

*11. Which other present or former corporate officers, directors, employees, or other persons acting on behalf of the corporation may have knowledge concerning any of the above areas?

* Indicates answered by respondent.

2. 1. During the years 1971 through 1974, were any expenses of the Corporation, or any expenditures of the corporate income or assets, attributable, directly or indirectly, to any of the following, and reflecting directly or indirectly in the tax returns of the Corporation for the years in question: (a) Payment by the Corporation, any officer or employee or third party of any bribes, kickbacks or other payments, regardless of form, whether in money, property or services, to any employee, person, company, or organization to obtain favorable treatment in securing business or to otherwise obtain special concessions, or to pay for favorable treatment for business secured or for special concessions already obtained? (b) Payments by the Corporation to any corporate officer or employee or any third party acting on behalf of the Corporation of or for bribes, kickbacks, or

Language directed to other illegal conduct, which the Court deemed to have no effect on tax liability, was deleted from the questions. The Court then directed Mr. Richards to respond to the modified questions. On April 26, 1977, petitioners moved to reopen the case and applied for a modification of the Court's order. Mr. Richards, with counsel, opposed petitioners' motion and filed a memorandum in support thereof. The matter is currently ripe for disposition notwithstanding the Court's previously expressed intention to await a decision in an identical case by the United States Court of Appeals for the Fifth Circuit. In light of the soon to expire limitations period on tax assessments for the years 1971 through 1974, the Court deems it appropriate to enter a final order in this matter. For the reasons that follow, the Court denies petitioners' motion to reopen the case and application for modification of the Court's order.

■ To obtain enforcement of an I.R.S. summons, petitioners must show (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry may be relevant to that purpose, (3) that the information sought is not already within the Commissioner's possession, and (4) that the administrative steps required by the Code have been followed. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The Court is concerned here with only the first two requirements listed above. Although the Court focused its attention primarily on the second of the requirements in its earlier memorandum, a threshold examination of the purpose of the I.R.S. investigation under the first requirement is in order.

■ The scope of the investigatory power of the I.R.S. is determined by Section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602. Section 7602 grants the I.R.S. summons power "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, [or] determining the liability of any personal for any internal revenue tax . . . ." Any inquiry outside this statutory purpose constitutes an unauthorized use of the summons power.

■ The statute does not, unfortunately, specify when or under what circumstances the summons power may be exer-

other payments regardless of form, whether in money, property or services, directly or indirectly, to or for the benefit of any government official or employee, domestic or foreign, whether on the national level or lower level such as state, county or local (in the case of a foreign government also including any level inferior to the national level) and including regulatory agencies or governmentally-controlled businesses, corporations, companies, or societies, for the purpose of affecting his/her action or the action of the government he/she represents to obtain favorable treatment in securing business or to obtain special concessions, or to pay for business secured or special concessions obtained in the past? (c) The use of corporate funds, or corporate property of any kind, donated, loaned or made available, directly or indirectly, to or for the use or benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign? (d) Payment or disbursement, loans, donations or other disbursements, regardless of form, for the performing of services for the benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign? (e) Loans, donations, or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of reimbursing such corporate officers, employees or others for contributions made, directly or indirectly, for the use or benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

2. During the years 1971 through 1974, was any corporate officer or employee compensated, directly or indirectly, by the Corporation, for time spent or expenses incurred in performing services for the benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

3. During the years 1971 through 1974, did the Corporation make any loans, donations or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of making contributions, directly or indirectly, for the use or benefit of, or the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

4. Which of the present or former corporate officers, directors, employees, or other persons acting on behalf of the Corporation may have knowledge concerning any of the above areas?

cised. Mr. Richards has argued that, in the absence of a suspicion that Fidelity Corporation's tax returns are in error, the I.R.S. has no authority to make the "slush fund" inquiry in the present case. As noted in the Court's order and memorandum of April 18, 1977, the I.R.S. is not bound by a "probable cause" standard. Rather, the IRS may conduct an investigation "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Powell, supra* at 57, 85 S.Ct. at 255, *quoting United States v. Morton Salt Co.,* 338 U.S. 632, 642–43, 70 S.Ct. 357, 94 L.Ed. 401 (1950). Therefore, the I.R.S. is authorized to summons Mr. Richards for questioning in order to determine that Fidelity Corporation has not employed illegal practices so as to avoid tax liability.

 This broad investigatory power is not limitless; all questions asked pursuant to an I.R.S. investigation must, under the second requirement, be relevant to the purpose of determining compliance or non-compliance with the tax laws. 26 U.S.C. § 7602(3). The Court in its earlier order and memorandum found many of petitioners' questions too broad, inquiring into conduct unrelated to any potential tax liability. These questions address the occurrence or nonoccurrence of various illegal payments without restricting the inquiry to those payments which had or might have had an affect on Fidelity Corporation's tax returns. Finding the language of these questions to constitute an unauthorized intrusion into matters outside the scope of I.R.S. investigatory powers, the Court modified the questions and added a preamble that restricted the inquiry to expenditures "reflected directly or indirectly in the tax returns of the Corporation for the years in question." [3] Petitioners' memoranda in support of their motions to reopen this action and to modify the Court's order have failed to dissuade the Court from its finding that the proper focus of this I.R.S. investigation is on those illegal payments from which Fidelity gained some tax deduction or credit in circumvention of the tax laws.

The relevancy requirement has been quite adequately defined as a test of whether the inspection sought might have thrown light on the correctness of the taxpayer's returns. *United States v. Matras,* 487 F.2d 1271, 1274 (8th Cir. 1973); *United States v. Shlom,* 420 F.2d 263 (2d Cir. 1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970). The United States Court of Appeals for the Second Circuit has further refined this standard by defining the "might" in "might have thrown light upon" to mean whether, in the particular circumstances, there exists an indication of a "realistic expectation rather than an idle hope that something may be discovered." *United States v. Harrington,* 388 F.2d 520, 524 (2d Cir. 1968). The relevancy standard requires, then, that petitioners' inquiry limit itself to Fidelity Corporation's tax returns and those transactions which petitioners reasonably expect to throw some light on the accuracy thereof.

The questions as modified, in the Court's view, satisfy this relevancy requirement. Petitioners have argued, however, that limiting the scope of the inquiry to those corporate expenditures that are directly or indirectly reflected in Fidelity Corporation's returns has prevented the I.R.S. from discovering the "myriad types of transactions which can be involved in illegal payments, schemes, or slush funds." As an example of such a "scheme" that would not be reflected as either a deduction or a credit, petitioners posit the existence of an illegal payment out of unreported income which would not appear at all on the tax return.

Initially, the Court finds that any inquiry into such hypothetical schemes runs afoul of the Second Circuit's interpretation of the relevancy standard, constituting "an idle hope that something may be discovered" in

---

3. The Tax Section of the New York Bar Association has likewise suggested that responses to the eleven questions be limited to payments that "have generated or may in the future generate or affect deductions or credits on the Company's federal income tax return . . ." *See* N.Y. State Bar Ass'n., *Report on the Internal Revenue Service 'Slush Fund' Investigation,* 32 Tax.L.Rev. 161, 235–36 (1977).

illegal payments not reflected on the return which could somehow affect Fidelity Corporation's tax liability. *Cf. United States v. Goldman*, 453 F.Supp. 508, 511–12 (C.D.Cal. 1978). Secondly, such an inquiry is patently irrelevant to the stated purpose of this slush fund investigation, because illegal payments may only be used to gain a tax advantage if they are somehow reflected, directly or indirectly, on a taxpayer's return.[4] The fact that such a payment was made, for example, from unreported income, is not material to this investigation. The existence of the unreported income and not the occurrence of any expenditure therefrom would be relevant to Fidelity Corporation's tax liability and could be questioned by a simple and direct inquiry directed towards unreported income.

Although the Court sympathizes with petitioners' expressed inability to discern the "myriad ways in which such a fund could be created and expended," it is not the province of the I.R.S. to inquire into this area of corporate activity except insofar as the corporate expenditures affect tax liability. While the misplaced ingenuity of law violators may appear to be boundless, and thus an impediment to ferreting out illegal acts affecting tax liability, the experience and expertise of the I.R.S., in the Court's view, is equal to the task. While a sense of utter confusion over the ins and outs of tax laws is familiar to most taxpayers, including, and especially, the Court, an expression of bafflement by the tax collectors themselves, although a bit unsettling, is in the Court's view, no more than a statement of an enthusiastic advocate.

The Court does not find persuasive petitioners' argument that the Court's preamble restricting the scope of inquiry leaves too much discretion to the taxpayer or his agent to withhold relevant information. While petitioners argue that the modified

questions permit Mr. Richards to make the determination of which expenditures were reflected in the tax return, the Court finds this duty no more objectionable or discretionary than the determination of which payments were "bribes", "kickbacks", "loans", "disbursements", etc., which were left to Mr. Richards under the original questions. Only by means of the Court-imposed restriction may these questions meet the relevancy requirement explained above. Without such a limitation, the summons is unreasonable and disproportionate to the end sought. *Cf. United States v. Theodore*, 479 F.2d 749 (4th Cir. 1973) (summons to accounting firm executive to produce all clients' returns held too broad and vague). Any inquiry outside the limits set out in the Court's preamble would constitute an impermissible "fishing expedition" which this Court cannot sanction.[5]

The Court acknowledges its own lack of expertise in drafting questions regarding tax matters. As noted in the Court's earlier order, however, it is the federal court's duty to interpose itself between the government and the person summoned to ensure "that a legitimate investigation was being conducted and that the summons was no broader than necessary to achieve its purpose." *United States v. Bisceglia*, 420 U.S. 141, 151, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975). Should petitioners seek other information relevant to Fidelity Corporation's tax liability, such as unreported income or corporate net worth, a simple, direct question or questions directed to those issues would be appropriate and welcomed by the Court. The burden is on petitioners to prove relevance and not on Mr. Richards to prove the irrelevance of any inquiry made by the I.R.S. to Fidelity Corporation's tax liability. The complexity of tax issues is no excuse for an overly broad summons. For the reasons stated in

---

4. It is noteworthy that the New York State Bar Association's Tax Section has suggested that the slush fund inquiry is *not* primarily undertaken to ensure the collection of revenue, the main function of the auditing process. *Id.* at 162.

5. It should be noted here that the Court restricted the scope of the inquiry to those transactions reflected in 1971–1974 tax returns because those returns were under investigation. The Court finds no problem with an inquiry into 1971–1974 transactions which are reflected in returns filed after that three-year period.

the Court's order of April 18, 1977, as reiterated and supplemented by this memorandum, the Court will deny petitioners' motion and application.