UNITED STATES of America; P. L. Sylvia, Jr., Revenue Agent, Internal Revenue Service, Appellants,

v.

Harold J. RICHARDS, Appellee.

UNITED STATES of America; P. L. Sylvia, Jr., Revenue Agent, Internal Revenue Service, Appellees,

v.

Harold J. RICHARDS, Appellant.

Nos. 80–1023, 80–1084.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 13, 1980.

Decided Oct. 2, 1980.

---

**8.** *Marvel Specialty Co. v. Bell Hosiery Mills, Inc.*, supra; *Tektronix, Inc. v. United States*, 552 F.2d 343 (Ct.Cl.1977).

**9.** 35 U.S.C. § 284.

William A. Whitledge, Tax Div., Dept. of Justice, Washington, D.C. (Justin W. Williams, U. S. Atty., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Carleton D. Powell, Tax Div., Dept. of Justice, Washington, D.C., on brief), for appellants/cross–appellees.

Robert J. Jones, Washington, D.C. (Milton V. Freeman, Walter J. Rockler, Stephen L. Hester, Thomas D. Fuller, Arnold & Porter, Washington, D.C., on brief), for appellee/cross–appellant.

Before FIELD, Senior Circuit Judge, and HALL and SPROUSE, Circuit Judges.

FIELD, Senior Circuit Judge:

Incident to an investigation of the federal income tax liability of Fidelity Corporation for the years 1971–1974, P. L. Sylvia, an Internal Revenue Agent, issued a summons to Harold J. Richards, president of the corporation during the years in question, directing him to appear and respond to a series of eleven questions.[1] The questions

---

1. The eleven questions propounded to Richards read as follows:

1. During the years 1971 through 1974, did the corporation, any officer or employee or any third party acting on behalf of the corporation, make, directly or indirectly, any bribes, kickbacks or other payments, regardless of form, whether in money, property, or services, to any employee, person, company or organization, or any representative of any person, company or organization, to obtain favorable treatment in securing business or to otherwise obtain special concessions, or to pay for favorable treatment for business secured or for special concessions already obtained?

2. During the years 1971 through 1974, did the corporation, any corporate officer or employee or any third party acting on behalf of the corporation, make any bribes, kickbacks, or other payments regardless of form whether in money, property or services, directly or indirectly, to or for the benefit of any government official or employee, domestic or foreign, whether on the national level or a lower level such as state, county or local (in the case of a foreign government also including any level inferior to the national level) and including regulatory agencies or governmentally ·controlled businesses, corporations, companies or societies, for the purpose of affecting his/her action or the action of the

were part of the Service's Coordinated Examination Program conducted as an annual review of all United States corporations with gross assets in excess of $250 million and all United States financial institutions and utilities with gross assets of $1 billion or more. The questions were designed to uncover illegal payments which conceivably could affect corporate tax liability and, as a matter of policy, were asked regardless of suspicion of impropriety.

Richards appeared in response to the summons but refused to answer all but three of the questions. The Government thereupon filed its petition in the district court seeking judicial enforcement of the summons under 26 U.S.C. §§ 7402(b) and 7604(a). In a carefully considered opinion, Judge Merhige concluded that some of the questions called for responses which were not relevant or appropriate to an I.R.S. investigation and modified them by the addition of a preamble limiting their scope to any expenditures of the corporate income or assets "reflected directly or indirectly" in Fidelity's tax returns for the years in question.[2] The court then ordered Richards to answer the questions as modified by its memorandum opinion.[3] Thereafter the

government he/she represents to obtain favorable treatment in securing business or to obtain special concessions, or to pay for business secured or special concessions obtained in the past?

3. During the years 1971 through 1974, were corporate funds donated, loaned or made available, directly or indirectly, to or for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

4. During the years 1971 through 1974, was corporate property of any kind donated, loaned, or made available, directly or indirectly, to or for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

5. During the years 1971 through 1974, was any corporate officer or employee compensated, directly or indirectly, by the corporation, for time spent or expenses incurred in performing services for the benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

6. During the years 1971 through 1974, did the corporation make any loans, donations or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of making contributions, directly or indirectly, for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

7. During the years 1971 through 1974, did the corporation make any loans, donations or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of reimbursing such corporate officers, employees or others for contributions made, directly or indirectly, for the use or benefit of, or for the purpose of opposing, any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?

8. During the years 1971 through 1974, does now or did any corporate officer or employee or any third party acting on behalf of the domestic corporation have signatory or other authority or control over disbursements from foreign bank accounts?

9. During the years 1971 through 1974, does now or did the corporation maintain a bank account or any other account of any kind, either domestic or foreign, which account was not reflected on the corporate books, records, balance sheets, or financial statements?

10. During the years 1971 through 1974, does now or did the corporation or any other person or entity acting on behalf of the corporation maintain a domestic or foreign numbered account or an account in a name other than the name of the corporation?

11. Which other present or former corporate officers, directors, employees, or other persons acting on behalf of the corporation may have knowledge concerning any of the above areas?

Richards declined to answer all of the questions except numbers 8, 9 and 10.

2. *United States v. Richards*, 431 F.Supp. 249 (E.D.Va.1977).

3. The questions, as modified by the district court, are as follows:

1. During the years 1971 through 1974, were any expenses of the corporation, or any expenditures of the corporate income or assets, attributable, directly or indirectly, to any of the following, and reflected directly or indirectly in the tax returns of the Corporation for the years in question: (a) payment by the Corporation, any officer or employee or any third party of any bribes, kickbacks or other payments, regardless of form, whether in money, property or services, to any employee, person, company,

Government filed a motion to reopen the case and for modification of the order, which motion was denied by the court for the reasons stated in a second memorandum opinion.[4]

The Government has appealed from the action of the court in refusing enforcement of the summons without modification of the standard text of the eleven questions. The Government contends that the modification of the questions by the district court impermissibly restricted the power of the I.R.S. to accurately assess the tax liability of the corporation by precluding investigation of transactions not reflected directly or indirectly in the tax returns. Richards has filed a cross–appeal from the order enforcing the summons as modified, contending that the questions remain vague and overbroad, and constitute an illegal "fishing expedition" on the part of the Service.

■ The district courts of the United States have jurisdiction to enforce an I.R.S. summons, 26 U.S.C. §§ 7402(b) and 7604(a), and will do so when the Service demonstrates compliance with the substantive requirements of *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry may be relevant to that purpose, (3) that the information sought is not already within the Commissioner's possession, and (4) that the proper administrative procedures have been followed.[5] Since the issues presented below and those which we consider upon appeal involve the application of the first two prongs of *Powell*, it is helpful to discuss briefly their statutory basis.

■ Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602, represents a broad grant of investigatory power to the

or organization to obtain favorable treatment in securing business or to otherwise obtain special concessions, or to pay for favorable treatment for business secured or for special concessions already obtained? (b) payments by the Corporation to any corporate officer or employee or any third party acting on behalf of the Corporation of or for bribes, kickbacks, or other payments regardless of form, whether in money, property or services, directly or indirectly, to or for the benefit of any government official or employee, domestic or foreign, whether on the national level or lower level such as state, county or local (in the case of a foreign government also including any level inferior to the national level) and including regulatory agencies or governmentally–controlled businesses, corporations, companies or societies, for the purpose of affecting his/her action or the action of the government he/she represents to obtain favorable treatment in securing business or to obtain special concessions, or to pay for business secured or special concessions obtained in the past? (c) the use of corporate funds, or corporate property of any kind, donated, loaned or made available, directly or indirectly, to or for the use or benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign? (d) payment or disbursement, loans, donations or other disbursements, regardless of form, for the performing of services for the benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign? (e) loans, donations, or other disbursements, directly or indirectly, to corporate officers or

employees or others for the purpose of reimbursing such corporate officers, employees or others for contributions made, directly or indirectly, for the use or benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?
2. During the years 1971 through 1974, was any corporate officer or employee compensated, directly or indirectly, by the Corporation, for time spent or expenses incurred in performing services for the benefit of, or for the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?
3. During the years 1971 through 1974, did the Corporation make any loans, donations or other disbursements, directly or indirectly, to corporate officers or employees or others for the purpose of making contributions, directly or indirectly, for the use or benefit of, or the purpose of opposing any government or subdivision thereof, political party, candidate or committee, either domestic or foreign?
4. Which of the present or former corporate officers, directors, employees, or other persons acting on behalf of the Corporation may have knowledge concerning any of the above areas?

4. *United States v. Richards*, 479 F.Supp. 828 (E.D.Va.1979).

5. The appropriate procedural steps for enforcement were analyzed and detailed in *United States v. McCarthy*, 514 F.2d 368, 372–73 (3 Cir. 1975).

I.R.S. which the Supreme Court has analogized to that of a grand jury which can investigate " 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.' " *United States v. Powell*, 379 U.S. at 57, 85 S.Ct. at 255. A district court, asked to enforce an I.R.S. summons, will initially consider whether the summons was issued pursuant to a legitimate purpose of an I.R.S. investigation. The Service has been authorized to utilize the summons as an investigative device "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, [or] determining the liability of any person for any internal revenue tax." 26 U.S.C. § 7602. A summons issued for any purpose other than aiding a determination of tax liability obviously exceeds the scope of authority granted the Service.

 The district court will next consider whether the information sought by the summons "may be relevant" to tax liability. When the taxpayer is a corporation the Service is expressly authorized to summon corporate officers and employees to produce information which "may be relevant" to corporate tax liability. 26 U.S.C. § 7602(2). Congress authorized the Service's use of the summons power by the phraseology "may be" relevant, rather than "is" relevant. This choice of words indicates acknowledgment that the Commissioner often cannot be certain that documents are, in fact, relevant or material until after he sees them. *United States v. Noall*, 587 F.2d 123 (2 Cir. 1978). This low threshold requirement is satisfied when the Government shows that "the inspection sought 'might * * * [throw] light upon' the correctness of the taxpayer's returns." *Foster v. United States*, 265 F.2d 183 (2 Cir. 1959). The relevancy test has been further refined by defining "might" in "might * * [throw] light upon" to mean that, in a specific case, the Service has a "realistic expectation rather than an idle hope that something may be discovered." *United States v. Harrington*, 388 F.2d 520, 524 (2 Cir. 1968).

Thus, prior to judicial enforcement, the court must conclude that there is a realistic expectation that the information called for by the summons will throw light upon the respondent's federal tax liability.

We recognize this relevancy standard to be minimal for a higher threshold might unduly interfere with the Service's ability to detect violations of federal revenue law. However, a summons will be deemed unreasonable and will not be enforced if it is overbroad and disproportionate to the end sought, and a "fishing expedition" through a taxpayer's records exceeds the relevant scope of the summons power. *United States v. Theodore*, 479 F.2d 749, 754 (4 Cir. 1973).

In concluding that modification was appropriate, the district court determined that "at least some of the questions involved here by their very phraseology relate to potentially illegal *payments*, not *deductions* made by the Corporation, and to that extent, constitute a 'fishing expedition' beyond the relevant scope of an Internal Revenue Service investigation." [6] The court reasoned that if the Corporation had made illegal payments but had not utilized such payments to affect its tax liability in any manner, they would be beyond the scope of a legitimate I.R.S. investigation. The Government concedes that illegal corporate payments concealed as or included in facially legitimate deductions fall within the ambit of expenditures "reflected directly or indirectly" in the tax return. In such a case the deceptive deduction would, of course, be "reflected directly" in the return. The principal contention of the Government centers upon the phrase "reflected * * * indirectly". The Government argues here, as it did below, that the preamble adopted by the district court to modify the questions impedes the detection of fraudulent tax schemes by permitting a respondent to subjectively determine that such schemes are not reflected in the corporate return. The Government suggests that an illegal payment made from unreported income would

---

**6.** 431 F.Supp., at 252.

not be reflected on the tax return and the Service would thereby be frustrated in its attempt to trace such a payment to its source. We agree with the district court, however, that illegal payments may be used to gain a tax advantage only if they are in some manner reflected directly or indirectly on the taxpayer's return. In the case posited by the Government it is the existence of the unreported income, not the illegal expenditure, which would be relevant to the question of the Corporation's tax liability. As the district.court noted, the existence of any unreported income could be questioned by a simple and unambiguous inquiry on the subject directed to the taxpayer.

The district court is vested with considerable authority to modify a summons prior to enforcement,[7] and we agree with Judge Merhige that specific questions directing the taxpayer's attention to areas of genuine concern to the Service are more appropriate than broad and general inquiries calling for subjective interpretation by the respondent under the threat of perjury. "Congress has provided protection from arbitrary or capricious action by placing the federal courts between the Government and the person summoned. The District Court in this case conscientiously discharged its duty to see that a legitimate investigation was being conducted and that the summons was no broader than necessary to achieve its purpose." *See United States v. Bisceglia*, 420 U.S. 141, 151, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1974).

We are in accord with the analysis and conclusions of the district court as reflected in its two opinions and, accordingly, affirm its enforcement order.

*AFFIRMED.*

7. *See, e. g., United States v. Luther*, 481 F.2d 429, 433 (9 Cir. 1973); *United States v. Dauphin Deposit Trust Co.*, 385 F.2d 129 (3 Cir. 1967); *Dunn v. Ross*, 356 F.2d 664, 667 (5 Cir. 1966).