**UNITED STATES of America and Benjamin F. Howell, Jr., Special Agent, Internal Revenue Service, Petitioners,**

v.

**Olen E. MORGAN, Respondent.**

**Misc. No. 526–M.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 9, 1984.

Charles R. Brewer, U.S. Atty., Asheville, N.C., and Richard S. Poe, Asst. U.S. Atty., Charlotte, N.C., for petitioners.

William H. McNair and Moses Luski, Ruff, Bond, Cobb, Wade & McNair, Charlotte, N.C., for respondent.

## MEMORANDUM OF DECISION AND ORDER

McMILLAN, District Judge.

The United States of America and Special Agent Benjamin F. Howell, Jr., have petitioned this court to enforce an administrative summons issued against and served upon Olen E. Morgan pursuant to 26 U.S.C. § 7602. Morgan has responded, and he objects to the petition on both constitutional and procedural grounds.

I. OLEN MORGAN, SOLE STOCKHOLDER AND PRESIDENT OF A CORPORATE TAXPAYER, CONTESTS THE ENFORCEMENT OF AN IRS SUMMONS ISSUED AGAINST HIM PURSUANT TO 26 U.S.C. § 7602, WHICH REQUIRES HIM TO PRODUCE BOOKS AND RECORDS OF HIS WHOLLY OWNED CORPORATION AND TO GIVE TESTIMONY ABOUT THOSE BOOKS AND RECORDS.

In the winter of 1982, Internal Revenue Service (IRS) agent Leniel Brite approached Olen Morgan, president and sole stockholder of Pool Builder's Supply of the Carolinas, Inc. (PBS), for the purpose of auditing the records of that corporation pertaining to tax years 1979 and 1980. Morgan cooperated with agent Brite and allowed Brite to examine, over a period of four months, the requested PBS records. Brite last examined the records in May of 1982. Morgan's verified response asserts that Brite thereby completed his inspection of the PBS records for the years 1979 and 1980. Four months later, on September 23, 1982, Special Agents Benjamin Howell and Robert Greene contacted Morgan's attorneys and indicated that they were investigating possible criminal violations committed by Morgan. Howell has filed a sworn declaration that his investigation and attempted inspection of PBS records is a continuation of Brite's inspection. On January 4, 1983, Special Agent Howell issued an administrative summons, pursuant to 26 U.S.C. § 7602, which directed Morgan to produce PBS documents and give testimony relating to tax years 1978, 1979 and 1980. The summons demanded production of the following documents:

1. Bank statements, cancelled checks, deposit tickets and check stubs for the period December 1, 1977, through January 31, 1981, for Pool Builders Supply of the Carolinas, Inc.

2. Savings account statements and/or passbooks for the period December 1, 1977, through January 31, 1981, for Pool Builders Supply of the Carolinas, Inc.

3. Books and records of Pool Builders Supply of the Carolinas, Inc. maintained in the course of business for the years 1978, 1979 and 1980, including, but not limited to, the following:

| | | |
|---|---|---|
| a. | Cash receipts and disbursements journal | 1978, 1979, 1980 |
| b. | General journal and general ledger | 1978, 1979, 1980 |
| c. | Accounts receivable ledger | 1978, 1979, 1980 |
| d. | Accounts payable ledger | 1978, 1979, 1980 |
| e. | Sales invoices and purchase invoices | 1978, 1979, 1980 |
| f. | Legal sheets reflecting the daily sales | 1978, 1979, 1980 |
| g. | Legal sheets summarizing sales yearly | 1978, 1979, 1980 |
| h. | Records reflecting corporate expenses | 1978, 1979, 1980 |
| i. | Documents reflecting notes and loans to and from the corporation. | 1978, 1979, 1980 |

Neither PBS nor Morgan received written notice that a second inspection of PBS records for tax years 1979 and 1980 was necessary. Morgan appeared before Special Agent Howell as required by the summons, but he refused to provide testimony or produce records. The United States and Howell have petitioned the court to enforce the summons.

II. TO THE EXTENT THAT THE SUMMONS WAS PROPERLY ISSUED, THE COURT WILL REQUIRE ITS ENFORCEMENT; TO THE EXTENT THAT THE SUMMONS WAS NOT PROPERLY ISSUED, THE COURT WILL REQUIRE ITS MODIFICATION.

Although the IRS may issue an administrative summons under 26 U.S.C. § 7602, it "has no power of its own to enforce the summons but must apply to the district

court in order to compel production of the requested [information]." *United States v. Lask,* 703 F.2d 293, 297 (8th Cir.1983). The district courts of the United States have jurisdiction to enforce an IRS summons because of the authority granted to them by Congress in 26 U.S.C. §§ 7402(a) and 7604(b).

■ "[A] proceeding to enforce an I.R.S. summons is an adversary proceeding in which the defendant may contest the summons 'on any appropriate ground' ...." *United States v. Rylander,* — U.S. —, —, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983), *quoting Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). "The district court is vested with considerable authority to modify a summons prior to enforcement" if the court determines that the summons, in its present form, was improperly issued. *United States v. Richards,* 631 F.2d 341, 346 (4th Cir.1980). The court should enforce the summons to the extent that

> the Service demonstrates compliance with the substantive requirements of *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry may be relevant to that purpose, (3) that the information sought is not already within the Commissioner's possession, and (4) that the proper administrative procedures have been followed.

*United States v. Richards, supra,* p. 344. *But see United States v. LaSalle National Bank,* 437 U.S. 298, 317–18, n. 19, 98 S.Ct. 2357, 2367–68, n. 19, 57 L.Ed.2d 221 (1978) (*Powell* elements are not exclusive. "The dispositive question in each case ... is whether the Service is pursuing the authorized purposes [of § 7602] in good faith.").

Morgan contests this summons on a number of grounds, but only some of them warrant discussion. Morgan has argued at length that the summons was not issued for a legitimate purpose because enforcement would allegedly violate his rights under the Fourth and Fifth amendments to the United States Constitution. He has argued that the statute under which the summons was issued, 26 U.S.C. § 7602, is facially unconstitutional. He has also argued that paragraph 3 of the summons is overbroad. Finally, he has argued against enforcement on the grounds that the procedures required by 26 U.S.C. § 7605(b) (IRS must give written notice before a second inspection of records for any taxable year) were not followed.

A. ENFORCEMENT OF THIS SUMMONS WOULD NOT OFFEND ANY FOURTH AMENDMENT INTERESTS BECAUSE REQUIRING MORGAN TO PRODUCE THE CORPORATION'S SPECIFICALLY DESCRIBED BUSINESS RECORDS DOES NOT INTRUDE INTO A PROTECTED "ZONE OF PRIVACY" OF EITHER THE CORPORATION OR MORGAN.

■ Morgan asserts that "this case is really a criminal tax investigation." Therefore, the argument goes, the IRS should obtain a warrant based upon probable cause before it can seize the information it seeks.

The Fourth Amendment claim should not prevent enforcement of the summons. The flaw in Morgan's argument is that neither Morgan's Fourth Amendment interests nor those of the corporation are affected by this summons.

> In *Hoffa v. United States,* 385 U.S. 293, 301–302 [87 S.Ct. 408, 413, 17 L.Ed.2d 374] (1966), the Court said that "no interest legitimately protected by the Fourth Amendment" is implicated by governmental investigative activities unless there is an intrusion into a zone of privacy, into "the security a man relies upon when he places himself or his property within a constitutionally protected area." * * * On their face, the documents subpoenaed here [business records of banks relating to taxpayer's bank account data] are not respondent's "private papers."

*United States v. Miller,* 425 U.S. 435, 440, 96 S.Ct. 1619, 1622, 48 L.Ed.2d 71 (1976). The summons issued in this case seeks only the business records of Pool Builder's Supply of the Carolinas, Inc. Those records

are not in any way "private papers" of Morgan, the individual, or of Pool Builder's Supply. *See also Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). *Cf. Donovan v. Lone Steer, Inc.,* —— U.S. ——, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984) (Department of Labor administrative subpoena *duces tecum* of business records did not violate Fourth Amendment.)

B. ENFORCEMENT OF THIS SUMMONS AGAINST MORGAN, CUSTODIAN OF THE CORPORATE RECORDS, WOULD, IN PART, VIOLATE HIS FIFTH AMENDMENT PRIVILEGE AGAINST SELF–INCRIMINATION.

Morgan asserts that since Special Agent Howell is investigating possible criminal violations of the Internal Revenue Code, Morgan should be able to invoke the Fifth Amendment and thereby avoid testifying and avoid producing the documents requested.

"The scope of the 'testimonial' ... duty imposed by common law or statute has traditionally been interpreted as an expansive duty limited principally by relevance and *privilege."* *United States v. Euge,* 444 U.S. 707, 712, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980) (emphasis added). The question thus becomes whether and how the Fifth Amendment privilege against self-incrimination applies to this summons.

The summons seeks to require (1) *testimony* by Morgan, (2) *production* of those corporate documents by Morgan, and (3) the corporate *documents themselves.*

1. Compulsory *Oral Testimony* By The Custodian Of Corporate Records, Despite The Fact That The Custodian Is Sole Stockholder And President, Is Forbidden By The Fifth Amendment If The Privilege Is Asserted.

■ A custodian of corporate records *may* invoke the Fifth Amendment privilege against self-incrimination when asked to give *oral testimony.* *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957). Thus, to the extent

that this court enforces the summons, Morgan may personally invoke the Fifth Amendment, if necessary, against oral testimony.

2. Even Though Producing Corporate Records May Incriminate The Custodian Of Those Records By *Verifying Their Existence* And By *Verifying Their Possession* By The Custodian, The Fifth Amendment Does Not Prohibit Compulsory Production Of The Records For That Reason When Their Existence Is Not In Doubt.

■ The Supreme Court has recognized "communicative aspects" in both oral testimony and the act of producing documents which *may* call for Fifth Amendment protection. *Fisher, supra.* By producing documents in response to a summons or subpoena requiring production of those documents, a custodian of corporate records may, by so acting, be asserting that those documents exist and that the custodian possesses the documents. *Id.*

In this case, however, although the act of producing the documents does have communicative aspects, the existence, and Morgan's possession, of corporate record books is not in doubt, and "the verification of their existence, inherent in their production, may fairly be termed not testimonial at all." *Fisher v. United States,* 425 U.S. 391, 432, 96 S.Ct. 1569, 1591, 48 L.Ed.2d 39 (Marshall, J., concurring).

3. Even Though Producing Corporate Records May Incriminate The Custodian Of Those Corporate Records By *Revealing Their Contents,* The Fifth Amendment Does Not Prohibit Compulsory Production Of The Records For That Reason.

The Supreme Court has long held that the custodian of corporate records may not withhold the production of such records on the ground that the custodian might be incriminated by their *contents.* *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). *See also Wil-*

son v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911) (custodian of labor union records may not withhold production of those records because of possibly incriminating contents).

Morgan has valiantly argued, citing United States v. White, supra, that this court should allow him to invoke the Fifth Amendment with regard to the contents of the PBS records, since, at the relevant time, he was the sole stockholder of PBS. Although he acknowledges in his brief that the authority is against him on this issue, Morgan asserts that the District and Circuit courts "have tended to apply without analysis or comment the holding in Wilson to solely owned corporations ...." Morgan wishes the court to consider his solely owned corporation to be the same as a sole proprietorship, and thereby allow Morgan to invoke the Fifth Amendment with regard to PBS corporate records.

Perhaps any shortage of recent judicial analysis on this question, if there is any such shortage, is a reflection of the mass of earlier authority and of the unequivocal pronouncement by the Supreme Court in White. Morgan may not claim Fifth Amendment protection on the basis that he might be incriminated by the records of "his" corporation. In December, 1983, the United States Supreme Court heard arguments concerning a sole proprietor's right to invoke the Fifth Amendment with respect to records of his companies. United States v. Doe, No. 82–786, argued Dec. 7, 1983, 52 U.S.L.W. 3452. See editorial summary of argument, 52 U.S.L.W. 3471 (U.S. Dec. 20, 1983). This court should not rule for respondent, however, on the basis of speculation that the Supreme Court may announce a change in the law on an issue before this court in the course of the Supreme Court's possible decision of another issue.

■ Nor can Morgan, as president of PBS, invoke the Fifth Amendment on behalf of Pool Builder's Supply, because corporations have no constitutional privilege against self-incrimination. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906). "The privilege is essentially a per-

sonal one, applying only to natural individuals." United States v. White, 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944).

### C. 26 U.S.C. § 7602 IS CONSTITUTIONAL ON ITS FACE.

■ Morgan claims that the 1982 amendment to § 7602, which, among other things, added subsection (b), renders the statute unconstitutional on its face under the Fourth and Fifth Amendments.

This court has already ruled that the statute is not unconstitutional as applied in this case. Putting aside any questions of Morgan's standing to challenge any further the constitutionality of the statute, the court finds that 26 U.S.C. § 7602 is constitutional.

Before the 1982 amendments to § 7602, the Congressionally authorized purposes for the summons were (1) ascertaining the correctness of any return, (2) determining the liability of any person for any internal revenue tax, and (3) collecting such liability. 26 U.S.C. § 7602(a). Numerous appellate courts have found § 7602 to be constitutional in its pre-1982 form. See United States v. Northwestern National Bank, 634 F.2d 394 (8th Cir.1980); United States v. First National Bank of the Black Hills, Mt. View, 626 F.2d 605 (8th Cir.1980); United States v. Sun First National Bank of Orlando, 510 F.2d 1107 (5th Cir.1975); United States v. Shlom, 420 F.2d 263 (2d Cir.1969). Furthermore, the United States Supreme Court has held that, so long as summonses issued under § 7602 are used for Congressionally authorized purposes articulated in § 7602, the summonses should be enforced. See e.g., United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978).

The 1982 amendment to the statute added another permissible purpose for a § 7602 summons. Such a summons may now be used for "the purpose of inquiring into any offense connected with the administration or enforcement of the internal rev-

enue laws." 26 U.S.C. § 7602(b). Morgan argues that this newly articulated purpose renders the statute unconstitutional insofar as it approves the use of the summons for purely criminal investigations.

Morgan's argument cannot withstand the holding in *LaSalle, supra.* *LaSalle* implicitly approved the use of a § 7602 summons for purely criminal investigations if such purpose was explicitly authorized by Congress. The amendment and the legislative history make it clear that such a purpose is now Congressionally authorized. 1982 *U.S.Code Cong. & Ad.News* 781, 1030, 1031–1032. The statute is thus not facially unconstitutional. (A summons issued pursuant to the statute is still, of course, subject to constitutional limitations in its application. *See United States v. Powell, supra.*)

### D. THIS SUMMONS IS TOO BROAD AND THE COURT WILL REQUIRE ITS MODIFICATION.

■ Paragraph 3 of this summons is too broad and will be modified by the court. *See United States v. Richards,* 631 F.2d 341 (1980). All of the documents *detailed* in paragraph 3 may be, and are, properly required to be produced. However, to the extent that the summons identifies the documents by the phrase "including, *but not limited to* . . ." (emphasis added), the summons is too broad. Production of any documents not specifically enumerated in paragraph 3 would be a "communicative act" by Morgan. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). *See* discussion, pp. 1467–1468, *supra.* Enforcement of the summons over Morgan's stated objection would, therefore, violate Morgan's personal Fifth Amendment right against compulsory self-incrimination. *Id.*

To the extent that this court may order Morgan to comply with the summons, Morgan's required response to paragraph 3 shall be only to produce *the documents listed.*

### E. THE COURT WILL SCHEDULE A HEARING AS TO WHETHER THE IRS HAS COMPLETED AN INITIAL INVESTIGATION OF THE CORPORATE RECORDS IN ORDER TO DETERMINE WHETHER 26 U.S.C. § 7605(b) REQUIRES ADDITIONAL NOTICE BEFORE THE IRS MAY FURTHER INSPECT THE CORPORATION'S RECORDS.

■ In response to Morgan's assertion that the summons should not issue because of the requirement of written notice in § 7605(b), petitioners have cited authority which suggests that no notice is required in this case. It seems clear that "no second inspection notice is required if it is factually established that the Agent involved had not completed his examination when he referred the case to a Special Agent for further investigation." *United States v. Gilpin,* 542 F.2d 38, 40 (7th Cir.1976). *See also United States v. Silvestain,* 668 F.2d 1161 (10th Cir.1982); *United States v. Popkin,* 623 F.2d 108 (9th Cir.1980); *United States v. Lenon,* 579 F.2d 420 (7th Cir. 1978).

Neither party in this case has "factually established" whether Agent Brite had completed his examination of PBS records for tax years 1979 and 1980. There are conflicting sworn statements by Howell and Morgan about the status of Agent Brite's investigation of the records at the time Brite last inspected them in May, 1982. There is nothing in the file, however, from anyone with first-hand knowledge of the status of that investigation.

It thus appears necessary that the court schedule an evidentiary hearing to determine whether Agent Brite completed his inspection of PBS records for tax years 1979 and 1980.

IT IS THEREFORE ORDERED:

1. That the Clerk shall schedule this case for hearing to determine whether Agent Brite completed an investigation of PBS records for tax years 1979 and 1980.

2. That Agent Brite shall bring his file to the hearing and provide testimony on

this issue and be available for cross-examination.

The court expects to make an order consistent with this memorandum at the conclusion of that evidentiary hearing.