**UNITED STATES of America, Appellee,**

v.

**James E. PENROD, Appellant.**

**No. 78–5125.**

United States Court of Appeals,
Fourth Circuit.

Argued July 13, 1979.

Decided Nov. 29, 1979.

Thomas P. Mains, Jr., Alexandria, Va., for appellant.

Leonie Brinkema, Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

WIDENER, Circuit Judge:

The defendant, James E. Penrod, was convicted by a jury on two counts of knowingly filing a false tax return in violation of 26 U.S.C. § 7206(1).[1] Prior to trial, the defendant moved to suppress certain evidence of personal and business financial records that the government had obtained from him pursuant to a grand jury subpoena. The district court denied the defendant's motion, and the defendant cites that ruling as error on appeal. The defendant also challenges one aspect of the trial court's instructions to the jury. We affirm.

In late 1969 or early 1970, the defendant began a small graphic arts business named Techni-Graphic Services. This business was an unincorporated sole proprietorship that the defendant operated out of his home. Prior to forming the business, the defendant had been employed for many years by Keuffel and Esser (K & E), a graphics firm.

During 1973 and 1974, the defendant became involved in a kickback scheme in the graphics industry. A government employ-

---

1. 26 U.S.C. § 7206(1):

Any person who . . . [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

The court sentenced the defendant to six months on each count, with the terms to run concurrently.

ee, Robert A. Jordan, developed a scheme whereby he embezzled unexpended funds left in his department's budget. He requested that K & E send him an invoice for work not done or ordered. Tyrus Meacham, the general manager of K & E, in turn requested the defendant to invoice K & E for work not done, or to overbill for work done. K & E would then pay the defendant for the invoiced work.

The defendant, to cover his transaction with K & E, set up a similar arrangement with several subcontractors who did work for him. The subcontractors invoiced the defendant, he says in the amount for which he had invoiced K & E, for work that was not performed. The defendant then paid the subcontractors by check, and instructed them to return to him the cash after deducting an amount sufficient to cover their increased taxes from the additional income. The defendant then deducted enough to cover his increased taxes, if any, on the arrangement, and transferred the cash to Meacham, who in turn paid Jordan. The defendant also was involved directly in a similar scheme with another government employee, Carl E. Anderson. The defendant did not profit financially from his participation in the kickback schemes.

The defendant for tax purposes handled the transactions as if they were ordinary orders for work actually to be performed. When he was paid for his invoice, he recognized that amount as gross income. The defendant reported those payments he made to the subcontractors as a deduction on form 1099 for the cost of goods sold. The defendant did not reflect in any way on his books or tax returns the cash he re-

ceived back from the subcontractors and passed on to Meacham and Anderson.

During 1976, the Justice Department instituted a joint tax and fraud investigation of the graphics industry. The investigation was a joint one in which the United States Attorneys in the Eastern District of Virginia and the District of Columbia participated.[2] On March 12, 1976, a grand jury sitting in the District of Columbia in connection with the investigation issued a subpoena directing the defendant to produce

> [a]ll documents pertaining to any transaction with Keuffel and Esser for the periods 1973 and 1975, including, but not limited to invoices, requests for services, delivery receipts, other documentations relating to work or services performed for Keuffel and Esser, and all commercial bank records for the above time period.

The defendant obeyed the subpoena and apparently cooperated with the government. He delivered the requested documents to Assistant United States Attorney Richard E. Stuckey on March 30, 1976. As a result of that investigation Meacham, Jordan, and Anderson were indicted by another grand jury and pled guilty to charges of defrauding the government.[3] The Justice Department did not prosecute the defendant in connection with the fraud aspects of the kickback schemes.[4]

Subsequently, the checks and invoices, rather than being returned to the defendant after the completion of the fraud investigation, were turned over to agents of the Internal Revenue Service, which used them as a basis for bringing this tax fraud case against the defendant. An I.R.S. agent later presented the documents to a grand

---

2. The district court held a hearing on the defendant's motion to suppress the evidence. At that hearing, neither side presented evidence and the court acted on the statements of the attorneys for both the defendant and the government. The government's attorney indicated that the government had instituted "a joint tax criminal investigation" in the Eastern District of Virginia and the District of Columbia. Because the defendant has presented no evidence to the contrary, we accept that statement as fact, as we do the statement of facts of the defendant's attorney at the hearing.

3. The grand jury to which the defendant delivered the documents failed to return an indictment against anyone. Another grand jury returned the indictment against Meacham, Jordan, and Anderson.

4. The record does not indicate that the Justice Department made any promise to the defendant not to prosecute him in connection with the kickback schemes.

jury sitting in the United States District Court for the Eastern District of Virginia. So far as we can tell from the record, the government attorneys failed to obtain a court order authorizing the transfer of the documents to either the I.R.S. or the federal grand jury sitting in Virginia. Nor does it appear that the District of Columbia court was ever informed of the transfer of the documents to the I.R.S.

On December 6, 1977, the grand jury sitting in Virginia returned an indictment against the defendant, charging him with two counts of tax fraud. The indictment alleged that he knowingly understated his income for the years 1973 and 1974. Prior to trial, the government voluntarily dismissed the indictment, and on February 7, 1978, an indictment was returned in open court alleging that the defendant had overstated his deductions claimed for the cost of goods sold on his returns for the same years. This latter was the indictment on which the defendant was tried.

Prior to trial, the defendant moved to suppress the documents that he had presented to the District of Columbia grand jury. The defendant argued unsuccessfully that use of the documents violated his Fourth and Fifth Amendment rights, and that the government had violated Federal Rule of Criminal Procedure 6(e) in turning over the documents to the I.R.S. and the Virginia grand jury without obtaining court approval.

After the evidence was in, the court, over the objection of the defendant, instructed the jury that an income tax return reporting cost of goods sold as the defendant had done was an untrue return.

The jury convicted the defendant on two counts of subscribing to false tax returns, from which conviction this appeal followed.

The defendant challenges the ruling of the district court denying his motion to suppress the documents that the government had obtained by his compliance with the subpoena issued by the grand jury sitting in the District of Columbia. These documents can be divided into two major categories. One group contains the cancelled checks that the defendant had given to the subcontractors as payment for unperformed work. The other group contains the invoices that the subcontractors had given to the defendant, representing the unperformed work and the charges for that work. The record does not indicate that anyone other than the defendant had access to these invoices after he received them from the various subcontractors.

■ Although we assume without deciding that the defendant could have declined to deliver the invoices in response to the District of Columbia grand jury subpoena,[5] we hold that he waived any Fifth Amendment right he may have possessed. The defendant voluntarily delivered the documents to the grand jury, and the record contains no indication that the defendant raised an objection to the subpoena at that time. We note that the defendant was represented by counsel at the time he complied with the subpoena.

That a witness before a grand jury is entitled to invoke the privilege against self-incrimination is beyond dispute. *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). Also beyond dispute is that a person must invoke such a right, and the failure to do so forecloses him from invoking the privilege. The information he

---

5. *Bellis v. United States,* 417 U.S. 85, 87–88, 94 S.Ct. 2179, 2182–2183, 40 L.Ed.2d 678 (1974): "The privilege [against self-incrimination] applies to the business records of the sole proprietor or sole practitioner as well as to personal documents containing more intimate information about the individual's private life." *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1816) is on point. *Boyd* protects against the "compulsory production of a man's private papers to establish a criminal charge against him." Id. at 622, 6 S.Ct. at 528. *Boyd* was concerned with an invoice, the same kind of document involved in this case. We also assume without deciding that the government could have compelled the defendant to produce the checks. See *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), where the Court emphasized that it could "perceive no legitimate 'expectation of privacy' " in checks. Id. at 442, 96 S.Ct. at 1624.

furnishes may be later introduced as evidence against him in a criminal proceeding. See *United States v. Mandujano,* 425 U.S. 564, 574–75, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *Garner v. United States,* 424 U.S. 141, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1931). Cases from other jurisdictions have held that if a person voluntarily chooses to testify before a grand jury, his testimony is admissible at the trial of the case against him. *United States v. Capaldo,* 402 F.2d 821, 823–824 (2d Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969); *United States v. Alaimo,* 297 F.2d 604, 607 (3rd Cir. 1961), cert. denied, 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784 (1962). We can discern no difference between oral testimony given to a grand jury and documents presented to a grand jury pursuant to a subpoena. If the defendant had claimed the Fifth Amendment privilege before the District of Columbia grand jury, he certainly would have placed that fact before us, which he has not done. Thus, we assume he did not claim the privilege and hold that by failing to invoke the privilege against self-incrimination at the time he delivered the documents to the grand jury, the defendant waived any such privilege he may have possessed not to comply with the subpoena.[6]

The defendant's contention that the government violated Federal Rule of Criminal Procedure 6(e), and thus the documents should have been suppressed, is also without merit. Rule 6(e) reads in pertinent part:

> Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a[n] . . . attorney . . . may disclose matters . . . only when so directed by the court preliminarily to or in connection with a judicial proceeding.[7]

This rule confirms the long-established policy of maintaining the secrecy of grand jury proceedings. *Dennis v. United States,* 384 U.S. 855, 869, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *United States v. Johnson,* 337 F.2d 180, 197 (4th Cir. 1964), aff'd, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681, cert. denied, 385 U.S. 846, 87 S.Ct. 44, 17 L.Ed.2d 77, 385 U.S. 889, 87 S.Ct. 134, 17 L.Ed.2d 117 (1966). One important reason for this desire to maintain secrecy is "to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes." *United States v. Johnson,* 337 F.2d at 197, n. 25 (quoting *United*

---

**6.** Neither the Supreme Court, *United States v. Washington,* 431 U.S. 181, 190, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977), nor this circuit has determined whether a potential defendant before a grand jury must be given warnings regarding his Fifth Amendment rights, and the record does not indicate whether such warnings were given the defendant in this case. The defendant failed, however, to make such a claim either at the suppression hearing or on appeal to this court. Thus, we need not address the question.

**7.** Congress amended Rule 6(e), effective October 1, 1977. The amendment allows a government attorney, without the requirement of obtaining a prior court order, to disclose matters occurring before a grand jury to, for example, agents of the I.R.S. or F.B.I. so that the agents may assist the government attorney in his investigation of federal criminal law. See S.Rep. No.95–354, 95th Cong., 1st Sess., reprinted in (1977) U.S.Code Cong. & Admin.News, pp. 527, 530–32. The amended rule recognizes the need of government attorneys and the grand jury to

utilize the services of other government employees.

This exception, however, is subject to the qualifications that the agents' names and a description of the materials disclosed be provided to the district court. See *In re Grand Jury Subpoenas, April 1978, at Baltimore,* 581 F.2d 1103 (4th Cir. 1978), cert. denied, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).

The record does not indicate the dates when the documents were first handed over to the I.R.S. and when they were later presented to the grand jury in Virginia. Given that the defendant complied with the subpoena issued by the District of Columbia grand jury 18 months prior to the effective date of the amendment, and given that the Virginia grand jury returned its indictment only one month after the effective date of the amendment, to give the defendant the benefit of the doubt we assume that Rule 6(e) prior to its amendment applies to this case. We do not decide what effect, if any, the amendment would have on this case, but it would be no more favorable than the rule prior to the amendment.

*States v. Rose,* 215 F.2d 617, 628–29 (3rd Cir. 1954)).

■ The grand jury minutes are not the property of the attorneys or agents of the government. Rather, these documents are records of the court. *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 684–85, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (Mr. Justice Whittaker, concurring). Documents produced pursuant to a grand jury subpoena remain the property of the person producing them, and they may be revealed to persons other than the grand jury and the prosecuting attorneys only upon the consent of the owner of the documents or upon a court order. *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir. 1960).[8]

■ We find, however, no error in the use by the government of the documents delivered to the United States Attorney for the District of Columbia. The investigation was a joint investigation of criminal and tax matters participated in by both United States Attorneys' offices. We think that when the papers came into the hands of either United States Attorney involved in the investigation, that was the equivalent of delivery to both of them. And, when the United States Attorney for the Eastern District of Virginia had the papers in his possession, and subject to no Fifth Amendment claim, he had the right to turn them over to the I.R.S. to develop the case. While it is true that we have said that a motion to suppress may be well argued for violation of Rule 6(e), see *In re Grand Jury Subpoenas, April 1978, at Baltimore,* 581 F.2d 1103, n. 6 (4th Cir. 1978), cert. den., 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979), we think the rule does not require suppression here for the United States Attorney for the Eastern District of Virginia received the papers in the course of the investigation of the matter at hand. See *United States v. Garcia,* 420 F.2d 309 (2d

Cir. 1970). Cf. *United States v. E. H. Koester Bakery Co.,* 334 F.Supp. 377 (D.Md. 1971).

■ The defendant also argues that the trial court's instruction to the jury on the elements of the offense with which he was charged directed a finding of guilt on the issue of falsity and thus is reversible error. The trial court instructed the jury as follows:

> You have heard a good deal of testimony and argument concerning the 1099 form. You are told that even though the 1099 form accurately reflected the actual amount paid to persons such as Rudy or Cummings, or Lam, the defendant cannot deduct amounts as costs of labor, even though they were included in those 1099 forms in those amounts, and to the extent that those amounts were paid to persons with the understanding that those amounts would be repaid to the defendant, and which were actually repaid to the defendant.

> And this is so regardless of what he may have done with the money after it was so repaid to him. And a return which undertakes to deduct such amount—that is, amounts which were returned to him on an understanding that they would be returned to him—a return which undertakes to deduct such amounts is an untrue return.

We do not think the district court erred in this case. Whether the return was true or not true was a matter of law, not fact, because the defendant testified as to how he took the deductions, and the district court accepted this fact in its instruction. There was no issue of fact on that point. *Guy v. United States,* 336 F.2d 595 (4th Cir. 1964). The issues of fact were whether the defendant willfully filed the untrue return, believing it to be untrue, which issues were submitted to the jury.

---

8. Generally, only the court that has jurisdiction over the grand jury has the authority to direct disclosure of the grand jury minutes or documents. See *In re Grand Jury Investigation of Banana Industry,* 214 F.Supp. 856 (D.Md.1963); C. Wright, *Fed.Prac. & Proc.* § 106, at 174 (1969).

Accordingly, the judgment of conviction is

*AFFIRMED.*