**UNITED STATES of America, et al.**

**v.**

**DARWIN CONSTRUCTION COMPANY, INC.**

Civ. No. Y–86–67.

United States District Court, D. Maryland.

April 16, 1986.

Breckinridge L. Willcox, U.S. Atty., Larry D. Adams, Asst. U.S. Atty., Baltimore, Md., and Robert L. Gordon, Washington, D.C., for plaintiffs.

Randall J. Turk, R. Stan Mortenson, Washington, D.C., and Price O. Gielen, Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This is a proceeding brought under 26 U.S.C. §§ 7402(a) and (b), and 7604(a), to judicially enforce an Internal Revenue summons which was served on the Darwin Construction Company, Inc. ("Darwin") on May 2, 1985. A hearing on the issues was held on March 25, 1986. The summons requested "(a)ll records or documents pertaining to the above corporation" for the period including 1980–1983. The summons also contained a list of 25 specific records which were to be produced as partial compliance with the summons. Most of these itemized records are standard business records, such as the general ledger, cash receipts book, checking and savings account books, and articles of incorporation—but the summons was not limited to these items. These records were requested to further an investigation of the liabilities of Lester J. Robinson for the same period, 1980–83, which could lead to either civil or criminal charges by the IRS. Robinson, as president and sole shareholder of Darwin, accepted service of the summons. Reluctant to comply with the summons, Robinson informed Special Agent Kohorst of the IRS on May 31, 1985, that he was invoking his right against self-incrimination and he refused to produce Darwin records. Presumably, because of the closely held nature of Darwin, Robinson is the only person who could provide these records to the IRS.

This enforcement action was filed on January 6, 1986, and on March 6, 1986, Robinson filed a motion to intervene so that his interests as the person who would be required to actually produce the corporate records may be protected. Also on March 6, 1986, Darwin and Robinson together filed a response to petitioners' petition to enforce IRS summons and order to show cause, which opposes the petition for three reasons: 1) that enforcement of the summons would violate Robinson's personal Fifth Amendment right against self-incrimination; 2) that the summons is too broad, not limiting the scope to relevant or material records; and 3) that the specific request for "a list of all employees" during the years prior to those under investigation are unrelated to the investigation.

**1428**

## INTERVENTION

■ It is established that a taxpayer under investigation has. no right to intervene in an enforcement action of a summons for business records. Intervention may be allowed, however, when the circumstances are appropriate, such as where there is a significant protectable interest. *Donaldson v. United States*, 400 U.S. 517, 530–31, 91 S.Ct. 534, 542–43, 27 L.Ed.2d 580 (1971). Examples of appropriate intervention include cases in which the taxpayer asserts that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, or that it is protected by the· attorney-client privilege. *Id.* at 530, 91 S.Ct. at 542, citing *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513–14, 11 L.Ed.2d 459 (1964). In *Donaldson*, the Court concluded that the taxpayer's interest was of insufficient magnitude to allow intervention. Donaldson's interest was that the material in question could be damaging, but he stated no claim of a protectable interest.

■ This case significantly differs from *Donaldson*. Robinson and the corporation, Darwin, are so closely connected that Robinson received the summons and would be the appropriate corporate agent to produce the records. Because enforcement of the summons would compel Robinson, individually, to act, it appears entirely appropriate for intervention so that the issue of potential self-incrimination can be explored.

## FIFTH AMENDMENT CLAIM

■ It is undisputed in this case that the contents of the requested documents are not privileged. Corporate papers generally are not viewed as "personal," and an officer holding the papers does so in a "representative" rather than a personal capacity. *E.g., United States v. Malnik*, 489 F.2d 682 (5th Cir.1974), *cert. denied*, 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50. *See Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974). When in that representative capacity, an individual may not· assert a Fifth Amendment privilege on behalf of a corporation, partnership, or other collective entity. *Bellis v. United States*, 417 U.S. at 90, 94

S.Ct. at 2184. Of course, if the records are personal (and it would be respondents burden to prove that they are personal), then the documents are entitled to full Fifth Amendment protection. *See In Re Grand Jury Investigation*, 600 F.Supp. 436 (D.Md. 1984) (citing *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); *In re John Doe No. 462*, 745 F.2d 834 (4th Cir.1984).

■ Robinson contends that he does have a Fifth Amendment claim in this case based upon the act of producing the documents.

The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v. United States*, 354 U.S. 118, 125 [77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225] (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976). Although in *Fisher*, the Court held that a subpoena served on taxpayers to produce their accountants' workpapers involved no Fifth Amendment violation because production was not testimonial in that case, the doctrine articulated in *Fisher* has successfully supported Fifth Amendment claims. *See United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). In *Fisher*, the Court concluded that producing the documents was not testimonial because the government in that case was not relying upon the taxpayer to prove the existence of, or his access to, the documents. *Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581. Also, because the documents were prepared by the accountant rather than the taxpayer,

the government was not relying upon the taxpayer to authenticate them. The accountant, rather than the taxpayer, would be the appropriate person to vouch for the authenticity and accuracy of the accountant's own work product. *Id.* at 413, 96 S.Ct. at 1582. Therefore, *Fisher* demonstrates that a taxpayer may be relieved from producing documents upon a showing that the documents are incriminating, and also that the act of producing the documents is communicative or testimonial.

In *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the IRS subpoenaed business records of a sole proprietorship. The contents of the records were unprotected because privilege may only be asserted to protect against *compelled* self-incrimination, whereas the *Doe* records were prepared voluntarily in the course of business. However, the Court upheld the District Court's explicit finding that the "enforcement of the subpoenas would compel respondent to admit that the records exist, that they are in his possession, and that they are authentic. These communications, if made under compulsion of a court decree, could violate respondent's Fifth Amendment rights."

■ Assuming, *arguendo,* that the "act of production" doctrine were applicable to this case, in order to prevail under that doctrine Robinson would have to prove: 1) that he would be incriminated by producing the documents, and 2) that the act of producing the documents would be communicative. The risks of incrimination must be shown to be "substantial and real," as in *Doe,* and not merely "trifling or imaginary." The government may then rebut the taxpayer's evidence by showing that possession, existence, and authentication of the documents are a "foregone conclusion." *United States v. Doe,* 465 U.S. at 614, n. 13, 104 S.Ct. at 1243, n. 13.

■ To date, Robinson has offered only broad conclusory assertions that production of the documents would be self-incriminatory. Absolutely no evidence has been offered to support these assertions and to explain how and why in his particular case he would be incriminated. Thus, Robin-

son's Fifth Amendment claim must be denied. In this factual and procedural setting, there is no need to reach the issue of whether the "act of production" doctrine does apply in this District to a corporate representative when the summons is served on the corporation.

## BREADTH OF THE SUMMONS

Respondents argue that the summons is too broad because it encompasses all records or documents pertaining to the above corporation, and also because even the list of 25 kinds of records is based on no more than the "idle hope that something may be discovered." (quoting *United States v. Harrington,* 388 F.2d 520, 524 (2d Cir.1968) ).

■ Under 26 U.S.C. § 7602, Congress authorized the use of the summons for any items "which may be relevant or material" to a particular tax inquiry. The Fourth Circuit has noted that the words "may be" were utilized, rather than "is"—indicating that the IRS is not required to be *certain* that the documents are relevant in order to request their production. *United States v. Richards,* 631 F.2d 341, 345 (4th Cir.1980). Thus, the government need only to show that the inspection of the requested documents "might ... (throw) light upon the correctness of the taxpayer's return," or that the IRS has a "realistic expectation rather than an idle hope that something may be discovered." *Id.* at 345 (quoting *Foster v. United States,* 265 F.2d 183 (2d Cir.1959), and *United States v. Harrington,* 388 F.2d at 524).

■ Although the Fourth Circuit has acknowledged that the standard is lax, the government must make some showing of relevancy to prevent a fishing expedition through the taxpayer's records. *United States v. Theodore,* 479 F.2d 749 (4th Cir. 1973); *United States v. Richards,* 631 F.2d at 345. Limiting the scope of the government's intrusion is particularly important where the demand for records is directed not to the taxpayer who is the target of the investigation but to a third-party. *United States v. Theodore,* 479 F.2d at 754.

In this case, respondents have a legitimate objection to the general all-inclusive language utilized in the summons. By requesting "(a)ll records or documents pertaining to the above corporation," the IRS has acknowledged no limitations, and has imposed on respondents an unjustified burden of producing wholly irrelevant documents. Therefore, the Court limits the summons to the 25 specifically itemized requests. As to respondents' objections to the 25 itemized requests, the Court will not limit the list further without a specific showing as to why the information or documents requested are not relevant to the IRS inquiry.

## CONCLUSION

Darwin, in conjunction with Robinson, in the capacity of an intervenor, has not established that the enforcement of the May 2, 1985 IRS summons would compel Robinson to incriminate himself. Further, respondents have not shown that the summons, as limited to the 25 itemized requests, extends beyond the bounds of acceptable breadth. Therefore, the summons will be judicially enforced, as limited to the 25 itemized requests.