By Supreme Court order filed 1/8/01, cert is granted in No. 99-4537 and case is vacated and remanded

UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4471

CHERRY RENE MARTIN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4537

JOHN CARRINGTON,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-98-37)

Submitted: March 28, 2000

Decided: April 21, 2000

Before NIEMEYER, WILLIAMS, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

COUNSEL

Krysia Carmel Nelson, CARMEL, NELSON & DUGGER, P.L.C.,
Charlottesville, Virginia; Dannie R. Sutton, Jr., GOODWIN, SUT-

TON, DUVAL & GEARY, P.L.C., Richmond, Virginia, for Appellants. Robert P. Crouch, Jr., United States Attorney, Ray B. Fitzgerald, Jr., Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

John Carrington and Cherry Rene Martin appeal their convictions for conspiracy to distribute crack cocaine in violation of 21 U.S.C.A. §§ 841(a)(1), 846 (West 1999). On appeal, Carrington and Martin both contend that insufficient evidence supported their respective convictions and that the district court erred in admitting evidence of Carrington's complicity in a co-conspirator's murder. Carrington also contends that the district court erred by admitting into evidence the transcript of his grand jury testimony and by determining the amount of drugs attributable to him for sentencing purposes. Additionally, Martin contends that the district court erred by denying her severance motion. Because we find no reversible error, we affirm.

First, both Carrington and Martin contend that although the Government provided ample evidence that a conspiracy to distribute crack cocaine existed, it provided insufficient evidence to support their connection to it. We sustain the jury verdicts against Carrington and Martin because we find that when taking the view most favorable to the Government, substantial evidence supports their convictions. See Glasser v. United States, 315 U.S. 60, 80 (1942) (stating standard). A defendant's connection to the conspiracy need only be slight to support a conspiracy conviction. See United States v. Burgos, 94 F.3d 849, 861 (4th Cir. 1996). Furthermore, the slight connection to the conspiracy can include a variety of conduct in addition to selling narcotics. See id. at 859. The record demonstrates that Carrington admit-

2

ted traveling to New York at least twice to obtain drugs, admitted killing a crack dealer who stole from the ringleader of the conspiracy, and threatened a potential witness to secure his silence. Regarding Martin, the record discloses that she accompanied others several times to New York in order to obtain drugs, that during these excursions to New York she hid drug purchase money in her shoes or boots in case the group was stopped by police, that she participated as a decoy at a bus depot in order to deceive interdiction officers, and that she was present at her parent's home when the ringleader came to retrieve drugs and money he frequently hid there. We find that these acts were in furtherance of the conspiratorial agreement, see United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir. 1993); United States v. McNeese, 901 F.2d 585, 599-600 (7th Cir. 1990), and therefore, sufficiently proved that both Carrington and Martin knew about the conspiracy and knowingly and voluntarily participated in it, see Burgos, 94 F.3d at 857 (stating elements of conspiracy to distribute narcotics).

Next, both Carrington and Martin contend that the district court erred in admitting evidence of Carrington's participation in the murder of a co-conspirator because Rule 404(b) of the Federal Rules of Evidence precluded it and because unfair prejudice substantially outweighed the evidence's probative value. We hold that the district court did not abuse its discretion when admitting this evidence. See United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997) (stating standard). Because the murder of a fellow conspirator was an act in furtherance of the conspiracy, see Arias-Villaneuva, 998 F.2d at 1503, evidence of the murder was not Rule 404(b) "other crimes, wrongs, or acts" evidence but rather direct or intrinsic evidence of the crime charged, see United States v. Garcia Abrego, 141 F.3d 142, 175 (5th Cir.), cert. denied, 119 S. Ct. 182 (1998). Furthermore, the district court properly mitigated any possible unfair prejudice from this evidence by giving a cautionary instruction, see United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996), and by limiting the testimony and details relating to the murder that could be admitted, see United States v. Meester, 762 F.2d 867, 875-76 (11th Cir. 1985). Finally, the fact that two co-defendants were acquitted on all charges and that Martin herself was acquitted on two of the charges against her demonstrates the absence of unfair prejudice by evidencing that

3

the jury was not excited to irrational behavior during its deliberations. See Aramony, 88 F.3d at 1378-79.

Next, Carrington argues that the district court erred by admitting his grand jury testimony into evidence because the prosecutor had previously violated his Fifth Amendment right to remain silent during the grand jury proceeding. Because Carrington never raised this claim at trial, we review only for plain error. See Fed. R. Crim. P. 52(b); United States v. Brewer, 1 F.3d 1430, 1434 (4th Cir. 1993). To demonstrate plain error, Carrington must establish: 1) an error occurred; 2) it was plain; 3) it prejudiced his substantial rights; and 4) it seriously affected the fairness and integrity of the judicial proceedings. See Brewer, 1 F.3d at 1434-35.

First, we find no error. A defendant may knowingly, voluntarily, and intelligently waive invocation of his Fifth Amendment right, see Miranda v. Arizona, 384 U.S. 436, 444 (1966), and we find that Carrington waived his right by answering a question he originally declined to answer. Moreover, the privilege is lost if not invoked, see United States v. Penrod, 609 F.2d 1092, 1095 (4th Cir. 1979), and Carrington failed to invoke this right as to any subsequent question during the grand jury proceeding. Furthermore, the answer Carrington gave was not itself incriminating because it failed to forge any links in the chain of facts connecting Carrington to the conspiracy. See Marchetti v. United States, 390 U.S. 39, 53 (1968); Hoffman v. United States, 341 U.S. 479, 486 (1951). Second, even if the prosecutor's comment that Carrington asserts coerced his response constituted error, we find that it did not seriously affect the fairness and integrity of the judicial proceedings. After a witness has invoked his Fifth Amendment right to remain silent, prosecutorial commentary on the scope of this right does not undermine the fundamental fairness of the grand jury proceeding. See United States v. Shuck, 895 F.2d 962, 966 (4th Cir. 1990). Hence, the prosecutor's reminder to Carrington that his Fifth Amendment privilege was limited to his own protection did not taint the grand jury proceeding at issue.

Next, Carrington argues that the district court erred in attributing to him 250 grams of crack cocaine for sentencing purposes because this amount was not reasonably foreseeable. We hold that the district court's factual finding concerning the amount of drugs attributable to

4

Carrington was not clearly erroneous. See United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999) (stating standard). Initially, we find that based on evidence adduced at trial and on amounts seized from drug couriers of the conspiracy, the Government proved this quantity and its reasonable foreseeability by a preponderance of the evidence. See United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993) (stating standard). Additionally, we note that because Carrington was sentenced as a career offender his base offense level, and thus his sentence, would not change if he was responsible for at least fifty grams of crack cocaine. See U.S. Sentencing Guidelines Manual § 4B1.1 (1988); see also 21 U.S.C.A. § 841(b)(1)(A)(iii) (West 1999). Even disregarding the testimony concerning his trip to New York, his participation in the murder of a co-conspirator, who stole around 57 grams of crack cocaine, provides ample evidence to support a finding of responsibility for at least 50 grams.

Finally, Martin contends that the district court abused its discretion by denying her severance motion after it ruled that the Government could admit evidence of Carrington's participation in the murder of a co-conspirator. We disagree. First, the jury's acquittal of two co-defendants on all charges pending against them and of Martin on two charges pending against her demonstrates that the jury sifted through the evidence and convicted Martin based on her individual culpability. See United States v. Porter, 821 F.2d 968, 972 (4th Cir. 1987). Second, the district court gave a detailed cautionary instruction mitigating any spillover effects of the murder evidence. See id. Third, contrary to Martin's assertion, she was not surprised by the murder evidence as she knew about it and the Government's desire to introduce it well before trial.

Accordingly, we affirm Carrington's and Martin's respective convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before the court and argument would not aid the decisional process.

AFFIRMED

5